UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

GEORGE R. ENCLARDE

CIVIL ACTION

VERSUS

NUMBER 13-56-SCR

LOUISIANA'S (LaDOTD), ET AL

## RULING ON MOTION FOR SUMMARY JUDGMENT

Before the court is the Defendants' Motion for Summary Judgment filed by defendants Louisiana Department of Transportation and Development, Stephanie Ducote and Kathy Horsfall.   Record document number 26.   The motion is opposed.[1]

## Background

Pro se plaintiff George R. Enclarde filed this action alleging several federal and state law claims against the defendants arising out of his employment with the Louisiana Department of Transportation and Development from July 12, 2010 until his termination on October 7, 2011.  Throughout the plaintiff's employment, his direct supervisor was Kathy Horsfall, State Internal Affirmative Action Manager, and Stephanie Ducote was the Compliance Programs Director and appointing authority. In his verified complaint the plaintiff alleged that his employer, Ducote and Horsfall discriminated against him based on his race, black, and retaliated against him in violation of Title VII and the First

---

[1] Record document number 30.

Amendment.   Plaintiff also alleged the defendants violated Louisiana civil service rules and committed intentional torts in violation of state law.

Defendants now move for summary judgment as to all of the claims alleged by the plaintiff. Defendants submitted the following evidence in support of their motion: (1) Defendants Exhibit 1, the declaration of Stephanie Ducote; (2) Exhibit A, attached to Ducote's declaration, consisting of various documents related to the plaintiff's hiring; (3) Exhibit B, attached to Ducote's declaration, consisting of a June 30, 2011 letter advising the plaintiff that he was not being recommended at that time for permanent status, and the reasons for the decision; (4) Exhibit C, attached to Ducote's declaration, consisting of a copy of the plaintiff's performance planning and review ("PPR") for the rating period July 1, 2010 through June 30, 2011 wherein the plaintiff received an overall rating of "Needs Improvement;" (5) Exhibit D, attached to Ducote's declaration, consisting of a letter of caution dated September 23, 2011 issued to the plaintiff and signed by Ducote, cautioning the plaintiff about  allowing enough time for all levels of review and the necessity of meeting deadlines; (6) Exhibit E, attached to Ducote's declaration, consisting of Ducote's October 7, 2011 letter to the plaintiff notifying him that he was being terminated effective October 7, 2011; (7) Defendants Exhibit 2, declaration of Kathy Horsfall; (8) Exhibits A-C, attached to

2

Horsfall's declaration, consisting of documents supporting her assessment in June/July 2011 that the plaintiff's probationary status should continue because his work needed improvement due to untimely submission of projects, data entry errors, and substandard writing skills; (9) Defendants Exhibit 3, excerpts from the plaintiff's deposition; and, (10) Defendants Exhibit 4, plaintiff's answers and responses to defendants' first set of interrogatories, request for production of documents, and request for admissions.

Based on the applicable law and the analysis that follows, the defendants' Motion for Summary Judgment is granted.

## **Summary Judgment Standard and Applicable Law**

Summary judgment is only proper when the moving party, in a properly supported motion, demonstrates that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law.  Rule 56©), Fed.R.Civ.P.; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510 (1986).  If the moving party carries its burden under Rule 56©, the opposing party must direct the court's attention to specific evidence in the record which demonstrates that it can satisfy a reasonable jury that it is entitled to verdict in its favor.  *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.  This burden is not satisfied by some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions or only a scintilla of evidence.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.

3

1994)(en banc); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).  In resolving the motion the court must review all the evidence and the record taken as a whole in the light most favorable to the party opposing the motion, and draw all reasonable inferences in that party's favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.  The court may not make credibility findings, weigh the evidence, or resolve factual disputes.  *Id.; Reeves v. Sanderson Plumbing Prods., Inc.*,  530 U.S. 133, 150, 120 S.Ct. 2097, 2110 (2000).  On summary judgment, evidence may only be considered to the extent not based on hearsay or other information excludable at trial. *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

The applicable substantive law dictates which facts are material. *Canady v. Bossier Parish School Bd.*, 240 F.3d 437, 439 (5th Cir. 2001).  The following substantive law is applicable in this case.

### Title VII Race Discrimination Claims

The well-established *McDonnell Douglas*[2] framework is applied to consideration of race discrimination claims brought under federal. To establish a prima facie case of race discrimination, the plaintiff must demonstrate that he is:  (1) a member of a

---

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973).

protected class; (2) qualified for the position; (3) suffered an adverse employment action; and, (4) was replaced by someone outside of the protected class, or that others outside of the protected group and similarly situated were treated more favorably. *Okoye v. University of Texas Houston Health Science Center*, 245 F.3d 507, 512-13 (5th Cir. 2001). The elements of a plaintiff's prima facie case necessarily vary depending on the particular facts of each case, and the nature of the claim. *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 (5th Cir. 1996); *McDonnell Douglas*, 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13.

A plaintiff's prima facie case creates an inference of discrimination that shifts the burden of production to the defendant to come forward with evidence that the adverse employment action was taken for a legitimate, nondiscriminatory reason. The burden is one of production, not persuasion, and "can involve no credibility assessment." *Reeves*, 530 U.S. at 142, 120 S. Ct. at 2106, citing, *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509, 113 S.Ct. 2742, 2748 (1993); *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000).

Once the employer articulates a legitimate nondiscriminatory reason and produces competent summary judgment evidence in support of it, the inference created by the prima facie case drops out of the picture. *Russell v. McKinney Hospital Venture*, 235 F.3d 219, 222 (5th Cir. 2000). The *McDonnell Douglas* framework with its

5

presumptions and burdens disappears, and the only remaining issue is discrimination vel non. The fact finder must decide the ultimate question of whether the plaintiff has proven intentional discrimination. Id.; *Reeves*, *supra*.

A plaintiff may attempt to establish that he was the victim of intentional discrimination by offering evidence that the employer's legitimate nondiscriminatory reason is unworthy of belief. The trier of fact may also consider the evidence establishing the plaintiff's prima facie case, and inferences properly drawn from it, on the issue of whether the defendant's explanation is pretextual. *Reeves*, supra; *Russell*, 235 F.3d at 222-23. Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. *Reeves*, 120 S.Ct. at 2108-09; *Russell*, 235 F.3d at 223.

Whether summary judgment is appropriate in any particular case will depend on a number of factors, including the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence relevant to the employer's motive. *Reeves*, 120 S.Ct. at 2109; *Crawford*, 234 F.3d at 902. The ultimate determination in every case is whether, viewing the evidence in the light most favorable to the plaintiff, a reasonable fact finder could infer

6

discrimination.  *Crawford*, supra.

As a result of the Supreme Court's decision in *Desert Palace v. Costa*, 539 U.S. 90, 123 S.Ct. 2148 (2003), the Fifth Circuit has developed a modified *McDonnell Douglas* approach under which a plaintiff relying on circumstantial evidence in support of his claim is not limited to demonstrating that the defendant's reason is pretextual, and may alternatively establish that discriminatory animus was a motivating factor in an adverse employment decision. *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005); *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 351-352 (5th Cir. 2005), citing, *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 311 (5th Cir. 2004).

The parties' burdens under the modified *McDonnell Douglas* approach are as follows:

> [Plaintiff] must still demonstrate a prima facie case of discrimination; the defendant then must articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff; and, if the defendant meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive alternative).

*Machinchick*, 398 F.3d at 352; *Keelan*, 407 F.3d at 341.

Therefore, to withstand summary judgment, using direct or circumstantial evidence, the plaintiff is required to present sufficient evidence for a reasonable jury to conclude that race was

a motivating factor for the defendant's adverse employment action. *Roberson v. Alltell Information Services*, 373 F.3d 647, 652 (5th Cir. 2004).

Plaintiff may also establish a violation of Title VII by proving that the workplace is permeated with discriminatory intimidation, ridicule and insult which is so severe or pervasive that it alters the conditions of employment and creates a hostile or abusive working environment. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 370 (1993); *Woods v. Delta Beverage Group, Inc.*, 274 F.3d 295, 298-99 (5th Cir. 2001); *Felton v. Polles*, 315 F.3d 470 (5th Cir. 2002); *Assamad v. Percy Square and Diamond Foods, LLC,* 2007-1229 (La.App. 1 Cir. 7/29/08), 993 So.2d 644, 648, *writ denied,* 2008-2138 (La. 11/10/08), 996 So.2d 1077.

To hold an employer liable for a claim that race discrimination has created an abusive or hostile working environment, a plaintiff must prove the following four elements in cases where it is asserted that a supervisor with authority to take tangible employment actions against an employee perpetrated the harassment: (1) that he belongs to a protected class; (2) that he was subjected to unwelcome harassment; (3) that the harassment was based on a prohibited ground, such as race; and, (4) that the harassment affected a term, condition, or privilege of employment. *Vance v. Ball State* University, _____ U.S. _____, 133 S.Ct. 2434,

Watts *v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999).[3]   A tangible employment action is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Vance*, 133 S.Ct. at 2442, citing, *Ellerth*, 524 U.S. at 762, 118 S.Ct. 2257.

If the alleged harassment is committed by a co-worker or a supervisor who is not empowered by the employer to take tangible employment actions, the plaintiff must also prove a fifth element - that the employer was negligent because it knew or should have known of the harassment and failed to take prompt remedial action. *Hockman v. Westward Communications, LLC*, 407 F.3d 317, 325 (5th Cir. 2004), *citing*, *Jones v. Flagship Int'l*, 793 F.2d 714, 719-20 (5th Cir. 1986), *cert. denied*, 479 U.S. 1065, 107 S.Ct. 952 (1987); *Vance*, 133 S.Ct. at 2441.

For harassment to affect a term, condition or privilege of employment it must be both objectively and subjectively severe or pervasive, i.e., the work environment must be one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so. *Lauderdale v. Texas Dept. of Criminal Justice, Inst. Div.*, 512 F.3d 157, 163 (5th Cir. 2007).   Whether a working environment is objectively hostile or abusive is determined

_____

[3] *Citing*, *Burlington Ind. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct.  2257 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275 (1998).

by considering the totality of the circumstances.  Courts look to:
(1) the frequency of the discriminatory conduct; (2) its severity;
(3) whether it is physically threatening or humiliating as opposed
to a mere offensive utterance; (4) whether it unreasonably
interferes with an employee's work performance, and (5) whether the
conduct undermines the plaintiff's workplace competence.  *Hockman*,
407 F.3d at 325-26; *Harris*, 510 U.S. at 23, 114 S.Ct. at 371.

Not all harassment will affect the terms, conditions, or
privileges of employment.  The mere utterance of an offensive
comment or remark which hurts an employee's feelings is not
sufficient to affect the conditions of employment.  Simple teasing,
offhand comments, and isolated incidents, unless they are extremely
serious, are not sufficient to affect the terms, conditions or
privileges of employment.  *Lauderdale*, *supra*; *Meritor Sav. Bank,
FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405 (1986).

The test for establishing a wage discrimination claim under
Title VII is substantially similar to that under the Equal Pay Act.
The plaintiff must prove that he is a member of a protected class
and was paid less than a non-member for work requiring
substantially the same responsibility. *Plemer v. Parsons-Gilbane*,
713 F.2d 1127, 1137 (5th Cir.1983); *Pittman v. Hattiesburg
Municipal Separate School District*, 644 F.2d 1071, 1074 (5th
Cir.1981).

### First Amendment Retaliation Claim

Under 42 U.S.C. § 1983 a plaintiff must establish the deprivation of a right secured by the Constitution or laws of the United States, committed by a person acting under color of state law. *Southwestern Bell Telephone, LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008).[4]  Plaintiff's § 1983 claim in this case is grounded on the First and Fourteenth Amendments.[5]  The First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern.  A First Amendment retaliation claim requires proof of the following elements: (1) an adverse employment action; (2) speech involving a matter of public concern; (3) the interest in speaking outweighs the employer's interest in promoting efficiency in the workplace, and (4) the employee's speech motivated the employer's adverse employment action. *Charles v. Grief*, 522 F.3d 508, 510, n. 2 (5th Cir. 2008).  Adverse employment actions against an employee include discharges, demotions, refusals to hire, refusals to

---

[4] The state of Louisiana is not a person subject to suit under § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 581, 109 S.Ct. 2304 (1989).

[5] Plaintiff alleged in his verified complaint that he was retaliated against for exercising his rights to free speech and expression under the First Amendment.  In their memorandum the defendants failed to cite the specific law applicable to this claim, but they did argue that the summary judgment evidence establishes they are entitled to summary judgment on any alleged retaliation claim.  Therefore, this claim will be addressed in this motion.  Rule 56(e), Fed.R.Civ.P.

promote and reprimands. *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997); *Breaux v. City of Garland*, 205 F.3d 150, 158 (5th Cir. 2000); *Gibson v. Kilpatrick*, 734 F.3d 395, 401 (5th Cir. 2013).

The Supreme Court's decision in *Garcetti v. Ceballos*, 547 U.S. 410, 126 S.Ct. 1951 (2006), added a threshold layer to this analysis. *Davis v. McKinney*, 518 F.3d 304, 312 (5th Cir. 2008). *Garcetti* holds that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." *Garcetti*, 547 U.S. at 421, 126 S.Ct. at 1960. Therefore, the court must initially determine whether the employee's speech is pursuant to his official duties. Speech that is required by a plaintiff's job duties or is part of his official duties is not protected by the First Amendment. *Id.*; *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 693-94 (5th Cir. 2007). As summed up by the Fifth Circuit in *Davis*: "Activities undertaken in the course of performing one's job are activities pursuant to official duties and not entitled to First Amendment protection." *Davis*, 518 F.3d at 313.

### State Law Claim - Intentional Infliction of Emotional Distress

To recover for intentional infliction of emotional distress under Louisiana law, a plaintiff has the burden of proving: (1) that the conduct of the defendants was extreme and outrageous; (2)

12

that the emotional distress suffered by him was severe; and (3) that the defendants desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from their conduct. *White v. Monsanto Co.*, 585 So.2d 1205, 1209-10 (La. 1991); *Moresi v. State, Department of Wildlife and Fisheries*, 567 So.2d 1081, 1095 (La. 1990); *Deus v. Allstate Insurance Co.*, 15 F.3d 506, 514 (5th Cir. 1994). The conduct complained of must be so outrageous in character and so extreme in degree that it goes beyond all possible bounds of decency and is regarded as utterly intolerable in a civilized community. *Id.* Liability arises only where the mental suffering or anguish is extreme, and the distress suffered must be such that no reasonable person could be expected to endure it. *White*, 585 So.2d at 1210.

Louisiana law sets a high threshold for establishing a claim for intentional infliction of emotional distress in a workplace environment. *See*, *Smith v. Amedisys*, 298 F.3d 434, 449-50 (5th Cir. 2002), *citing*, *White*, 585 So.2d at 1209-10; *Deus*, 15 F.3d at 516. Liability is usually limited to cases involving a pattern of deliberate, repeated harassment over a period of time, and the resulting mental anguish or suffering must be extreme or unendurable. *Bustamento v. Tucker*, 607 So.2d 532, 538 (La. 1992)(outrageous conduct must cause serious emotional harm to the plaintiff); *White*, 585 So.2d at 1210 (distress suffered must be

13

such that no reasonable person could be expected to endure it; liability arises only where the mental suffering or anguish is extreme).

## Analysis

### Title VII Race Discrimination Claims

Defendants argued that summary judgment should be granted dismissing the plaintiff's Title VII claims that he was terminated and harassed because of his race and paid less as compared to other white employees. Defendants argued that the plaintiff cannot establish the second and fourth elements of a prima facie case - that he was qualified for his position and that he was treated less favorably than similarly situated white employees.[6] Defendants argued that even if the plaintiff can establish a prima facie case, the plaintiff has no evidence to dispute the evidence which establishes the legitimate, non-discriminatory reasons for their employment actions.

Defendants have presented summary judgment evidence to establish the non-discriminatory reasons for their employment decisions. Therefore, for purposes of this motion all the competent summary judgment evidence will be considered in light of the plaintiff's burden of proving that race was a motivating factor

---

[6] Defendants did not dispute that the plaintiff is a member of a protected class and that he suffered an adverse employment action. Defendants arguments related to the prima facie element of qualifications are directed to their legitimate, non-discriminatory reasons for terminating the plaintiff's employment.

in setting his salary and in terminating his employment.

The following summary of undisputed facts contained in the record establishes the defendants' legitimate, non-discriminatory reasons. Defendants submitted evidence which showed that the plaintiff was hired in the position of CPS 3 on the recommendation of Ducote, and based on Ducote's recommendation was also paid a starting annual salary of $40,000. This salary was higher than the beginning salary for a CPS 3.[7] From the plaintiff's hire on July 12, 2010 until his termination on October 7, 2011, the plaintiff was a probationary employee within the agency's Title VII unit. Plaintiff's duties included working on the agency's affirmative action plan, and writing reports, recommendations and letters related to his interviews/investigations of employee complaints of discrimination and harassment.

After almost a year of employment the plaintiff's job performance was reviewed by his direct supervisor, Horsfall and Ducote. Plaintiff's overall rating was a "2" which on the PPR scale equated to a assessment that the plaintiff's job performance needed improvement. Some of the specific areas where the plaintiff was rated the lowest and given a "1" or a "2" contained the following explanations: (1) timeliness of investigations and report submissions should be improved on by adhering to deadlines mandated

---

[7] Without the adjustment to $40,000, the plaintiff's beginning salary would have been $29,604 annually. Record document number 26-3, Exhibit 1, Ducote declaration, attached Exhibit A, pp. 4-6.

by federal law; (2) the Affirmative Action Plan completed one week before required submission date, but had many errors that required hours of corrections; and (3) written letters and reports were minimally accurate and required numerous modifications, sometimes requiring multiple submissions before documents were accepted for approval/signature.[8]

In conjunction with this PPR, Horsfall also sent a letter to the plaintiff that was dated June 30, 2011 and signed by Ducote. The letter essentially restated the deficiencies in job performance noted in the PPR, and informed the plaintiff that his permanent status was not being recommended and his status as a probationary employee was being extended for 12 months to allow time to continue to evaluate his work.[9]  Approximately three months later Ducote issued the plaintiff a letter of caution on September 23, 2011 related to two of the same issues where the plaintiff had deficiencies noted in his PPR.  The letter essentially cautioned the plaintiff about taking the initiative and appropriate action to

---

[8] In his opposition memorandum the plaintiff appeared to argue that there is no evidence that the documents are his "actual work related submissions." However, Horsfall's declaration establishes this fact and the plaintiff offered no competent summary judgment evidence to dispute it.  Horsfall declaration, ¶ 6.

[9] Record document number 26-3, Exhibit 1, Ducote declaration, attached Exhibits B and C; record document number 26-4, Exhibit 2, Horsfall declaration, attached Exhibits B and C.  Also attached to Horsfall's declaration were examples of the plaintiff's reports and other work that had been corrected and revised. Horsfall declaration, ¶ 6, attached Exhibit A.

allow adequate review time to meet assigned deadlines, and to correct the errors on written work before submitting it to his supervisor Horsfall.[10]   Shortly thereafter, on October 7, 2011 a letter was issued and signed by Ducote that informed the plaintiff of his termination effective on that same date.[11]

In response to the defendants' motion, the plaintiff has failed to come with any evidence to dispute their non-discriminatory reasons or otherwise show that the defendants' decision was motivated by race.[12]   Plaintiff stated in his verified complaint that he received an excellent rating at his midyear evaluation in January 2011, and that he was not given any counseling about his writing skills before review of his eligibility for permanent status in June 2011.   Plaintiff also stated that the defendants violated various state agency policies and procedures.   However, none of these facts dispute the deficiencies stated in the plaintiff's June 30, 2011 PPR, or otherwise contradict the defendants' nondiscriminatory reasons for terminating the plaintiff in October 2011.

Plaintiff also alleged in his verified complaint that he was

---

[10] Record document number 26-3, Exhibit 1, Ducote declaration, attached Exhibit D.

[11] *Id.*, attached Exhibit E.

[12] Although the plaintiff filed an opposition memorandum, he did not submit any evidence to support his arguments.   Thus, the only evidence for the court to consider in opposition to the motion is the information contained in the plaintiff's verified complaint.

17

terminated for alleged abuse of his state credit card, and that Horsfall, who is white, committed the same or similar offense and was not disciplined.[13]  Yet, the plaintiff did not present specific facts about any incident involving Horsfall from which a reasonable juror could conclude that, under nearly identical circumstances, Horsfall received more favorable treatment.[14]  Similarly, the plaintiff alleged that two white employees hired as compliance specialists were paid significantly higher salaries, but he did not come forward with any evidence to support this conclusory allegation.

_____

[13] Plaintiff did not allege that after termination, he was replaced by someone outside the protected class.

[14] It is undisputed that Horsfall's position and job title were entirely different from the plaintiff.  Horsfall was a Compliance Program Specialist 4, was the plaintiff's direct supervisor and held the position of Internal Affirmative Action Manager.  Record document number 26-4, Exhibit 2, Horsfall declaration, ¶¶ 1-4.
For a race discrimination claim where the plaintiff alleges that employees who were not members of the protected class received no discipline or more lenient discipline for similar violations, the plaintiff must come forward with specific evidence of comparators who were similarly situated.  The Fifth Circuit requires an employee who proffers a fellow employee as a comparator, demonstrate that the employment actions at issue were taken under nearly identical circumstances. The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories.  And, critically, the plaintiff's conduct that drew the adverse employment decision must have been nearly identical to that of the proffered comparator who allegedly drew dissimilar employment decisions. *Lee v. Kansas City Southern Ry. Co.,* 574 F.3d 253, 260 (5th Cir. 2009).

Given this lack of evidence and the undisputed fact that Ducote sought and approved the plaintiff receiving a salary of more than $10,000 above the normal starting salary for the CPS 3 position, a reasonable juror could not find that the plaintiff was paid less than someone outside his protected class for work requiring substantially the same responsibility.

To the extent the plaintiff claimed that he was subject to an abusive or hostile work environment based on racial harassment, this claim is also unsupported.  Plaintiff generally alleged in his verified complaint that various aspects of the PPR conducted by his supervisors, such as criticism of his reports and his interactions with internal/external customers, and his failure to meet deadlines, constituted "harassment."  A reasonable trier of fact could not conclude based on such evidence that the plaintiff's work environment was objectively severe or pervasive, i.e., the work environment was such that a reasonable person would find it hostile or abusive.  Plaintiff also has the burden of proving that any alleged harassment was because of his race.  Once again, the plaintiff failed to present any competent summary judgment evidence that similarly situated white employees received more favorable treatment in their evaluations than he did, or any other evidence from which a reasonable trier of fact could infer that the actions the plaintiff complains about were motivated by race.

Without any evidence to dispute the legitimate, non-

discriminatory reasons given by the defendants for the plaintiff's termination, or evidence that similarly situated persons outside the protected class and under nearly identical circumstances were treated more favorably, no reasonable juror could find that race was a motivating factor in the plaintiff's termination. Nor is there any evidence from which a reasonable jury could infer that because of his race the plaintiff was subject to harassment or paid less than a non-member of the protected class for substantially the same work. The above analysis demonstrates that the plaintiff has failed to come forward with sufficient evidence to create a genuine dispute for trial on his claims of race discrimination under Title VII.[15]

### First Amendment Retaliation Claim

With regard to the plaintiff's claim of First Amendment retaliation, the plaintiff alleged in his verified complaint that he had stickers on his personal vehicle, he was told to remove them, and was verbally counseled about engaging in prohibited political activity.

One of the essential elements of a First Amendment retaliation

---

[15] It is unclear from the complaint whether the plaintiff is alleging a Title VII claim against Ducote and Horsfall.  However, to the extent the plaintiff does so these claims would be dismissed as a matter of law.  It is well-established that relief under Title VII is available only against an employer, and individual defendants who do not meet the Title VII definition of employer cannot be held liable under Title VII.  *Grant v. Lone Star Co.,* 21 F.3d 649, 651-53 (5th Cir. 1994).

claim is the existence of an adverse employment action.  Under the applicable law, the plaintiff's statement that he was verbally counseled for engaging in political activity does not constitute an adverse employment action.  To the extent the plaintiff alleged he was terminated in retaliation for exercising his First Amendment rights,[16] this claim also fails.  For the reasons explained above, the plaintiff has no evidence to dispute the defendants' legitimate reasons for his termination, nor any evidence from which a reasonable juror could find that his alleged First Amendment protected conduct was a motivating factor in the decision to terminate his employment.

**State Law Claim - Intentional Infliction of Emotional Distress**

Under Louisiana law, a plaintiff claiming intentional infliction of emotional distress has the burden of proving that the conduct of the defendants was extreme and outrageous, and that the emotional distress suffered by him was severe. The record is devoid of any evidence from which a reasonable trier of fact could infer that the defendants' alleged conduct toward the plaintiff was extreme and outrageous,[17] or that the plaintiff suffered severe

---

[16] The pleadings of pro se litigants must be liberally construed. *See, Estelle v. Gamble,* 492 U.S. 97, 106 97 S.Ct. 285, 292 (1976); *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594 (1972).

[17] Extreme and outrageous conduct must be so outrageous in character and extreme in degree that it goes beyond all possible
(continued...)

emotional distress as a result of the defendants' actions.[18]
Defendants are entitled to summary judgment as to this state law
claim.

## Conclusion

Defendants moved for summary judgment on all federal and state
law claims alleged by the plaintiff.  Based on the applicable law
and analysis above, the record establishes that the there is no
genuine dispute for trial on any of the plaintiff's claims alleged
under Title VII, 42 U.S.C. § 1983 and state law, and the defendants
are entitled to summary judgment.

Accordingly, the Defendants' Motion for Summary Judgment is
granted.  A separate judgment will be entered in due course.

Baton Rouge, Louisiana, February 11, 2014.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

---

[17](...continued)
bounds of decency and is regarded as utterly intolerable in a
civilized community. The mental suffering and distress must be such
that no reasonable person could be expected to endure it.  *White,
supra.*

[18] See, record document number 26-5, Plaintiff depo., pp. 107-
11.